**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 22 CR 219-3 |
| Plaintiff, | ) | |
| | ) | U.S. District Judge John J. Tharp |
| v. | ) | U.S. Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| REGINALD DANIELS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Reginald Daniels ("Defendant") was arrested on April 15, 2022, under the authority of an arrest warrant issued in connection with the return of the indictment (D.E. 1) in this matter charging Defendant with one count of knowing possession of a firearm on August 9, 2021, in this district, at a time when he knew he had been convicted previously of a felony offense. *See* 18 U.S.C. § 922(g)(1). At the initial appearance (D.E. 8) and detention status (D.E. 15) hearings in this case, the government disclosed that it wishes to present an oral statement by an innocent bystander, identified in the indictment as Individual C, at the continued detention hearing scheduled for 3 p.m. today, under the authority of the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(a)(4). The government has stated that a bullet fired by Defendant on August 9, 2021, struck Individual C in the neck, critically injuring and paralyzing Individual C from the neck down. Government's Memorandum in Support of Pre-Trial Detention (D.E. 13) at 3. This Order addresses whether Individual C may be heard at today's detention hearing, and if so, how Individual C may be heard.

The plain language of the CVRA allows crime victims to be "reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole

proceeding." 18 U.S.C. § 3771(a)(4). The statute does not elaborate on the meaning of "release," as in whether it refers only to release of a convicted, incarcerated person, or whether "release" as used in the statute encompasses pre-trial release, which is the subject of today's detention hearing. Arguably, when Congress provided that crime victims must be "reasonably heard" at the foregoing enumerated court proceedings, its intent was to extend the right to be heard to proceedings occurring after a defendant's conviction. The Court does not find that argument persuasive, because courts must be guided by the statutory language, and here, the CRVA says the right to be "reasonably heard" extends to hearings about "release." *See Bostock v. Clayton County, Ga.*, ___ U.S. ___, 140 S. Ct. 1731, 1754 (2020) ("Ours is a society of written laws. Judges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations.") Pre-trial "release" is a form of "release," so the Court reads Section 3771(a)(4) as affording victims, including Individual C in this case, the right to be reasonably heard at detention hearings. *United States v. Marcello*, 370 F. Supp. 2d 745, 750 (N.D. Ill. 2005) (Zagel, J.) ("The language of 18 U.S.C. § 3771 clearly requires that victims of crimes be afforded the right to be reasonably heard at detention hearings.").

Next, we consider the form in which Individual C has a right to be heard. The government is asking the Court to allow Individual C to make an oral statement at the detention hearing. But Section 3771(a)(4) does not state that a crime victim's right to be "reasonably heard" includes the right to make an oral statement at a detention hearing. Some courts have held that the right to be reasonably heard at a criminal sentencing hearing includes the right to make an oral statement. *Kenna v. United States Dist. Court for the Central Dist. of Cal.*, 435 F.3d 1011, 1016 (9th Cir. 2006). *Kenna* involved a sentencing hearing, but in writing for the Ninth Circuit panel, Judge Kozinski saw the right to make an oral statement as applying to "proceedings covered by the

CVRA." *Id.* Judge Kozinski analyzed the relatively sparse legislative history of the CVRA to reach that conclusion, but his opinion did not analyze the distinct character of a pre-trial detention hearing as involving defendants who are not yet convicted. *Id.* Judge Kozinski found the term "heard" to be ambiguous (and thus he resorted to a look at legislative history) and found "plausible" an interpretation limiting "reasonably heard" to "whatever means the court reasonably determines." *Id.*, citing *Marcello*, 370 F. Supp. 2d at 748.

In *Marcello*, the government argued that the CVRA required Judge Zagel, at a detention hearing in an organized crime case in which the defendants were alleged to have been engaged in a conspiracy that involved a murder, to allow an oral statement by the murder victim's son. *Id.* at 746-47. Judge Zagel declined to allow an oral statement but invited the government to submit a written statement from the victim's relative. *Id.* at 747. The judge reasoned that the statement, at the detention hearing, could be relevant to only three issues at the detention hearing: the strength of the case against the defendants, the seriousness of the alleged offenses, and the reasonable apprehension of personal danger to the victim (or the person whose oral statement the government wished to present). *Id.* The judge determined, based on information provided by the government, that the victim's relative had no evidence to offer as to the guilt of the defendants because the homicide happened some 20 years earlier, that there was no doubt as to the seriousness of the charged offenses, and that there was no claim that release of the defendants would endanger the victim's relative. *Id.* The judge allowed the victim's relative to make a written statement "so that I might learn whether there is something more to his statement than what the Government has suggested. Were there something more, I would hear his oral presentation." *Id.* No written statement, though, was provided, and the government maintained that the court still was required

to hear the victim's relative's oral statements "even if they would have no bearing on the decision presently before me." *Id.* at 747-48.

The factual context in the instant case appears to be similar. The government has said that Individual C was the victim of this shooting and suffered the horrible, unspeakable consequence of being paralyzed from the neck down. The government thus has made clear that from now on, unless some unexpected medical development occurs, Individual C will need around-the-clock assistance with every aspect of daily living. Individual C will not be able to eat unassisted, perform basic bodily functions, go for a walk in the park, drive a car, or do anything that ambulatory human beings in today's society ordinarily can do or enjoy, at least not without substantial assistance from a caregiver. The Court used the word "unspeakable" to describe this state of affairs, and there are few if any more accurate words to describe it. But all of this is plain to the Court from the government's representations. The seriousness of the charged offense is indeed grave, and obvious, for purposes of the Court's understanding of the nature and circumstances of the offense in the statutory detention calculus, as well as the impact release could have on the safety of the community. *See* 18 U.S.C. § 3142(g). The government has not said that Individual C has any facts to offer concerning the weight of the evidence at the detention hearing, or the personal history and characteristics of the defendant. *See* 18 U.S.C. § 3142(g). Thus, the Court's inclination is to follow *Marcello* and allow only a written statement from the prosecution. The Court has allowed this form of victim statement at a detention hearing on at least one prior occasion, although the detention order did not rely on the written statement from the family of a 13-year-old victim in a child exploitation matter. *United States v. Zelek*, No. 21 CR 496 (D.E. 13, 14) (N.D. Ill. Aug. 13, 2021).

4

The Court is further persuaded to allow a written, but not an oral, statement from the victim at the detention hearing by Judge Zagel's analysis in *Marcello*. First, the judge considered the statutory language to be clear (unlike Judge Kozinski in *Kenna*), requiring no resort to legislative history. *Marcello*, 370 F. Supp. 2d at 748. This Court concurs in that conclusion. Next, Judge Zagel reasoned that "reasonably heard" has an "ordinarily legal and statutory meaning" that "typically includes consideration of the papers alone." *Id.* (citing cases). This Court does not entirely concur with that conclusion. Rather, this Court would not exclude the possibility that in some circumstances, being "reasonably heard" could include the ability to make an oral statement. The Court does not see "reasonably heard" as a "term of art," as did Judge Zagel, but rather as simply a piece of statutory language to which the Court would ascribe ordinary meaning as it would to any statutory language per *Bostock*. Judge Zagel then noted that if Congress had intended "reasonably heard" to encompass a right to speak, Congress could have said so. *Id.* But of course, if Congress had intended its ban on employment discrimination on the basis of "sex" to include discrimination against LGBTQ persons, it could have said so but did not, and that did not prevent the Supreme Court from reading "sex" to mean exactly what it says in holding that discriminating against gay and transgender persons is indeed discrimination because of a person's "sex." *Bostock*, 140 S. Ct. at 1754; *see also Ulane v. Eastern Airlines, Inc.*, 581 F. Supp. 821, 825 (N.D. Ill. 1983) (Grady, J.) (finding, 37 years before *Bostock*, that Title VII's ban against employment discrimination based on "sex" covered transgender persons),. *rev'd*, 742 F.2d 1081 (7th Cir. 1984), *not followed as dicta*, *Hively v. Ivy Tech Comm. College of Ind.*, 853 F.3d 339, 341 (7th Cir. 2017).[1]

---

[1] The Seventh Circuit's decision reversing Judge Grady in *Ulane* was not mentioned in the majority opinion in *Bostock* but was relied on in dissents. *Bostock*, 140 S. Ct. at 1776, 1834 n.9. But the holding of *Bostock* most certainly overruled the Seventh Circuit's decision in *Ulane*.

In interpreting the meaning of "reasonably heard," this Court again does find the language to be clear, and it is further guided by Judge Zagel's analysis of the policies behind the CVRA.

Judge Zagel's policy analysis focused on how the CVRA's purpose was to "balance the rights of the victim against the right of the defendant in the courtroom." *Marcello*, 370 F. Supp. 2d at 749. Defendants' right to speak in criminal cases is limited, insofar as their ability to speak in open court without being sworn arises only at sentencing.[2] *Id.* at 750. When defendants provide sworn testimony, their statements are limited by the relevancy and competency boundaries set by the Federal Rules of Evidence. *Id.* Judge Zagel concluded that if Section 3771 is read to require oral statement by victims, even when those statements are immaterial, this result "would hardly achieve balance between the rights of victims and defendants." *Id.* Moreover, this Court agrees with Judge Zagel that whether Section 3771(a)(4) requires victims to be allowed to make oral statements at detention hearings is a question "on the far edge of the territory of victims' rights, well beyond the mainstream of victims' rights questions." *Id.* In proceedings concerning release from prison and at sentencings, a victim's statements will be "almost always relevant, material, and spoken from personal knowledge," but that is not always so at detention hearings at which defendants are "clothed with the presumption of innocence," and at which often the victim will not have material information to offer. *Id.*

Individual C most certainly has the right to be heard at this detention hearing. Individual C's right to be heard is a right, under the CVRA, to be "reasonably" heard. In following *Marcello*, this Court determines that "reasonably" leaves courts at detention hearings to exercise discretion

---

[2] This Court does not read Section 3771 as containing any requirement that in being "reasonably heard," a crime victim need be sworn. *See United States v. Shrader*, No. 1:09-0270, 2010 WL 4781625, at *3 (S.D. W. Va. Nov. 16, 2010) ("It is apparent that a victim has the right to speak at sentencing about the impact a defendant's criminal conduct has had upon her without being placed under oath and cross examined just as a defendant has the right to allocute in mitigation of sentence.").

in considering the materiality of victims' statements against the backdrop of what the Court already knows (including from the government and defense proffers, the charging instrument, and the report from Pre-Trial Services) about the nature and circumstances of the case, the personal history and characteristics of the defendant, the weight of the evidence, and the nature and seriousness of the danger to any person of the community that would be posed by a defendant's release. *See* 18 U.S.C. § 3142(g). As of now, the materiality of Individual C's statement to the statutory questions to be answered at the detention hearing has not been established, and the Court therefore has decided that the right to "reasonably heard," in this particular matter involving a detention hearing, does not extend to the making of an oral statement. The government is invited, and Individual C is allowed, to submit a written statement to the Court in advance of the hearing or at the hearing. If, on review of such a written statement, the Court determines that the circumstances are different and that Individual C's statements are material to any of the Section 3142(g) factors, the Court will consider again whether it will permit an unsworn oral statement.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: April 20, 2022**

7